FERNANDO L. and LIA A. GALAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Galan v. Commissioner
Docket No. 2069-75.
United States Tax Court
T.C. Memo 1976-306; 1976 Tax Ct. Memo LEXIS 96; 35 T.C.M. (CCH) 1377; T.C.M. (RIA) 760306; September 28, 1976, Filed Leonard Sussman, for the petitioner. Paul R. Stanton, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined the following deficiencies in petitioners' Federal income taxes: Taxable Year
Amount of Deficiency
1967
$1,029.42
1968
1,237.42
1969
1,468.94
1970
1,918.09
1971
1,906.66
1972
2,064.59
$9,625.12
The sole issue for our decision is whether petitioners are entitled to a net operating loss deduction, representing a net operating loss carryover from the taxable year 1962, in each of the taxable years 1967 through 1972, inclusive. FINDINGS OF FACT Some *98 of the facts have been stipulated and are so found. Petitioners Fernando L. Galan and Lia A. Galan, husband and wife, resided in Hialeah, Florida, at the time they filed the petition herein. Petitioners filed joint Federal income tax returns for the years in question with the Internal Revenue Service Center, Chamblee, Georgia. In approximately 1942, Fernando L. Galan (hereinafter petitioner) left the University of Toronto, where he was studying mechanical engineering, in order to help his father who owned and operated a cattle business known as the Santa Rita farm in Oriente Province, Cuba. Prior to 1944, petitioner worked on the ranch as an apprentice for which he received a salary of $75 per month in addition to room and board. After petitioner married in 1944, his father agreed to pay him $10,000 per year. After deductions for monthly payments of $125 and the amount of petitioner's ordinary household debts (which his father paid for him), the remainder of the $10,000 yearly commitment, approximately $6,000 per year, was invested by petitioner's father in the Santa Rita ranch operation for the benefit of petitioner. In November 1949, petitioner's father increased his *99 yearly salary commitment to petitioner to $15,000, and he increased the monthly payments to $175, while the household expenses remained the same so that petitioner's annual investment in Santa Rita increased to approximately $10,000. This 1949 agreement continued until 1961. Therefore, during the period 1944 through 1961, petitioner's father invested approximately $150,000 in the ranch for the benefit of petitioner. Before expropriation by the Cuban government, Santa Rita was a ranch consisting of 200 caballerias (approximately 6,600 acres) and 4,200 head of cattle. In 1959, the Cuban government confiscated 50 caballerias of land and 1,400 head of cattle. In 1960, the Cuban government confiscated another 100 caballerias of land and two-thirds of the remaining cattle. In 1960 petitioner and his father were evicted from the ranchhouse on Santa Rita, and petitioner moved to the nearby town of Victoria de las Tunas, where he lived in a hotel until 1962. Petitioner continued to operate the part of the farm that had not been seized. The Cuban government forbade petitioner to sell cattle, but he did so, on a cash basis, to people he knew. Petitioner became a resident alien of *100 the United States for tax purposes on May 13, 1962. At this time, a portion of the Santa Rita ranch (50 caballerias of land and about 900 head of cattle) had not yet been confiscated by the Cuban government. Petitioner's father died in Havana on December 17, 1968, still listed in the official records as the owner of Santa Rita. A statement attached to petitioner's 1967 Federal income tax return reads, in part, as follows: Miscellaneous deductions:
CUBAN LOSSES. Operating Loss, Business property confiscated by the Cuban Government in 1962. Claim presented and acknowledged by the Internal Revenue Service, Forms 3870, dated January 10, 1966.-- Ordinary Loss claimed in 1962
$152,000.00
Operating Losses Available
in 1967
$135,355.58
1967 Operating Exp.
7,105.35
Operating Loss for 1968
$128,250.23
In his Federal income tax returns for the taxable years 1967 through 1972, inclusive, petitioner took net operating loss deductions as follows: Taxable Year
Amount of Deduction
1967
$ 135,355.58
1968
128,250.00
1969
103,022.96
1970
91,857.71
1971
78,124.47
1972
63,530.48
In his statutory notice, respondent disallowed *101 such deductions in full. Petitioner has not introduced into evidence his Federal income tax returns for the taxable years 1962 through 1966, inclusive, nor has he introduced any other evidence of his taxable income for these years. Likewise, petitioner has introduced no evidence to establish in what year the 50 caballerias of land and 900 head of cattle, which had not been expropriated by the Cuban government as of May 13, 1962, were actually confiscated. OPINION For each of the taxable years in question, petitioner contends that he is entitled to a net operating loss deduction, arising from a net operating loss sustained in 1962 when the Cuban government expropriated the land and cattle of the Santa Rita ranch in which he had a property interest. Respondent, however, maintains that these deductions were not properly allowable under sections [1] 165 [2] and 172 [3] and he presents four alternative theories to support such disallowance. Respondent argues that (1) petitioner did not possess a property interest in the Santa Rita ranch, (2) petitioner has not shown that any loss occurred subsequent to the date that he became a resident of the United States, (3) petitioner has not *102 substantiated the amount of any loss, and (4) petitioner has not shown the amount of his taxable income for the intervening years 1962 through 1966 to which the 1962 net operating loss must be carried. We regretfully must agree with respondent that petitioner has not shown the amount of his taxable income for the intervening years and consequently is not entitled to any net operating loss deductions for the years 1967 through 1972. Since failure to prove taxable income for the intervening years is sufficient reason alone to sustain respondent's disallowance of the claimed deductions, we express no opinion as to the validity of respondent's other theories for sustaining such disallowance. *103 Under section 172(b)(2), the entire amount of a net operating loss must be carried to the earliest of the taxable years to which it may be carried under section 172(b)(1). Therefore, the amount of the net operating loss deduction available in a given taxable year equals the amount of the net operating loss less the sum of the taxable income for each of the prior taxable years to which the loss could have been carried, whether or not a net operating loss deduction was actually taken by the taxpayer in such earlier years. [4]
In the instant case, petitioner claims a net operating loss deduction arising from an alleged net operating loss sustained in 1962. Such loss may not be carried backward but may be carried forward for 15 years since the parties have stipulated that petitioner validly elected for section 172(b)(1)(D) to apply for the taxable year 1962. Since respondent did not allow any net operating loss deductions, petitioner has the burden of sustaining his right to such deductions, including the amount. A.Raymond Jones,25 T.C. 1100 (1956), revd. on another issue 259 F. 2d 300 (5th Cir. 1958). *104 Petitioner did not introduce into evidence his Federal income tax returns for the intervening years 1962 through 1966 nor did he introduce any other evidence as to the amount of his taxable income for those years. Accordingly, petitioner has not sustained his burden of proving that the 1962 loss was not entirely absorbed by taxable income for those intervening years to which the loss must be carried before it may be carried forward to 1967 and succeeding years. [5]
On his 1969 return, which was introduced into evidence, petitioner attached *105 a statement explaining that "Operating Losses Available in 1967" amounted to $135,355.88. This statement, standing alone, provides no evidence as to the amount of petitioner's taxable income for the intervening years. [6]Sec. 1.172-1(c), Income Tax Regs., states: (c) Statement with tax return. Every taxpayer claiming a net operating loss deduction for any taxable year shall file with his return for such year a concise statement setting forth the amount of the net operating loss deduction claimed and all material and pertinent facts relative thereto, including a detailed schedule showing the computation of the net operating loss deduction. Since petitioner has not fulfilled the "detailed schedule" requirement of the regulations, we cannot conclude that petitioner has correctly computed the amount that is shown as "Operating Losses Available in 1967." [7] Since there has been no showing that the computations were made in accordance with section 172(b)(2), such statement has no probative value and cannot establish the amount of petitioner's taxable income for the intervening years. Without proof of taxable income for the intervening years we are unable to determine whether petitioner *106 is entitled to any net operating loss deduction for 1967 and succeeding years. *107 Although we found petitioner to be a credible witness and we deeply regret what he has suffered, we must hold that respondent properly disallowed the claimed net operating loss deductions because petitioner has failed to carry his burden of proof. [8]
Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. ↩
2. SEC. 165. Losses. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. ↩
3. SEC. 172. NET OPERATING LOSS DEDUCTION. (a) Deduction Allowed.--There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection. (b) Net Operating Loss Carrybacks and Carryovers.-- (1) Years to which loss may be carried.-- * * *
(D) In the case of a taxpayer which has a foreign expropriation loss (as defined in subsection (k)) for any taxable year ending after December 31, 1958, the portion of the net operating loss for such year attributable to such foreign expropriation loss shall not be a net operating loss carryback to any taxable year preceding the taxable year of such loss and shall be a net operating loss carryover to each of the 10 taxable years following the taxable year of such loss (or, with respect to that portion of the net operating loss for such year attributable to a Cuban expropriation loss, to each of the 15 taxable years following the taxable year of such loss). * * *
(2) Amount of carrybacks and carryovers.-- Except as provided in subsections (i) and (j), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed-- (A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof; and (B) by determining the amount of the net operating loss deduction-- (i) without regard to the net operating loss for the loss year or for any taxable year thereafter, and (ii) without regard to that portion, if any, of a net operating loss for a taxable year attributable to a foreign expropriation loss, if such portion may not, under paragraph (1)(D), be carried back to such prior taxable year, and the taxable income so computed shall not be considered to be less than zero. * * *
(c) Net Operating Loss Defined.--For purposes of this section, the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d). (d) Modifications.--The modifications referred to in this section are as follows: (1) Net operating loss deduction.--No net operating loss deduction shall be allowed.
* * *
(3) Deduction for personal exemptions.--No deduction shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed. * * *
(k) Foreign Expropriation Loss Defined.--For purposes of subsection (b)-- * * *
(3) The term "Cuban expropriation loss" means, for any taxable year, a foreign expropriation loss sustained by reason of the expropriation, intervention, seizure, or similar taking of property, before January 1, 1964, by the government of Cuba, any political subdivision thereof, or any agency or instrumentality of the foregoing. The portion of a foreign expropriation loss for any taxable year attributable to a Cuban expropriation loss is the amount of the Cuban expropriation loss.↩
4. Jose M. Espinosa,T.C. Memo. 1973-20↩.
5. Of course, petitioner has not proved that the loss actually occurred in 1962. However, it is clear that the loss occurred sometime between 1962 and the date of petitioner's father's death in 1968. [Ex. 7-H] Even if the loss actually occurred in a year other than 1962 and even if a valid election was not made for section 172(b)(1)(D), there are, in every conceivable case, intervening years for which petitioner has not proved his taxable income. Therefore, we assume for the sake of simplicity that the loss did occur in 1962 so that the petitioner's valid election under section 172(b)(3)(C)(iii) for the year 1962 will apply to such loss.↩
6. In Walter W. Flora,T.C. Memo. 1965-64, the taxpayer attached a "Carry Forward Statement" to his 1958 return which showed the following: 1954
1956
Operating Loss Carry Forward
$134,956.27
$1,399.79
Less: 1958
11,852.81
Forward
123,103.46
1,399.79
$124,503.25 We held that petitioner had failed to establish a right to a net operating loss carryover deduction for 1958 since he had not produced evidence as to the amount of his taxable income in the years to which the losses must be carried before they may be carried forward to 1958. ↩
7. In this regard, it should be noted that on his 1967 return petitioner took a deduction for personal exemptions which is not allowable under sections 172(b)(2)(A) and 172(d)(3). Therefore, petitioner's computations are suspect. It is entirely possible that petitioner may have subtracted from his alleged operating loss of $152,000 only the amount of the net operating loss deductions that he actually deducted in the intervening years, whereas section 172(b)(2) specifically requires that the net operating loss available for a given taxable year be reduced by the sum of the taxable income (as modified according to section 172(b)(2)) for each of the prior taxable years to which such loss may be carried.↩
8. Walter W. Flora,supra;Benjamin S. Dowd,T.C. Memo. 1961-238; Est. of William C. Shore,T.C. Memo. 1956-75↩.